IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHERRY L. ESQUIVEL**,

     Plaintiff,

v.                                                                                          **CV 09-0421 WPL**

**MICHAEL J. ASTRUE**,
**COMMISSIONER OF SOCIAL SECURITY**,

     Defendant.

### ORDER

Sherry L. Esquivel unsuccessfully sought Social Security disability insurance benefits from November 8, 2004, which is the date she alleges she became unable to work. The Commissioner of Social Security issued a final decision denying benefits on February 17, 2009. Esquivel seeks reversal of that decision. Having considered the parties' submissions, the administrative record, and the applicable law, I will deny Esquivel's motion[1].

### PROCEDURAL BACKGROUND

Esquivel was represented by counsel in the administrative proceedings. The Administrative Law Judge ("ALJ") assigned to Esquivel's case held a hearing on January 17, 2008, received testimony from Esquivel and a vocational expert, and considered the medical record. *See* Admin. R. at 11, 250. On July 31, 2008, the ALJ determined that Esquivel's claim of a severe limitation of "being unable to ambulate effectively and requir[ing] crutches or wheelchair" was "entirely unsupported" and "not credible." *Id.* at 17. Based on the medical record, the ALJ concluded that Esquivel is "capable of performing her past [light] relevant work" as a merchandising manager and area supervisor. *Id.* Esquivel appealed to the Appeals Council, contending that the ALJ's decision

---

[1] I am presiding over this case by consent of the parties under 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. *See* Docs. 5, 9.

was "not supported by substantial evidence and contain[ed] errors of law." *Id.* at 7.  The Appeals

Council denied her request for review on February 19, 2009, *see id.* at 3-6, making the ALJ's

decision the final decision of the Commissioner.

Appearing pro se and proceeding *in forma pauperis*, on April 30, 2009 Esquivel filed a

Complaint in this Court using a § 1983 printed complaint form.  *See* Doc. 1.  She alleged violation

of her civil rights under 42 U.S.C. § 1983 because the ALJ allegedly lied "about [her] and [her]

medical conditions" and talked to her in a way she did not like.  *Id.* at 2-3.  Because judges generally

have absolute judicial immunity from any federal causes of action for alleged violation of civil rights

resulting from judicial or quasi-judicial proceedings, *see Stump v. Sparkman*, 435 U.S. 349, 355-56

(1978), and because Esquivel requested the relief of "Social Security to be released," *see* Doc. 1 at

5, I liberally construed her Complaint as an action brought pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), for review of the Commissioner's final decision denying

disability-insurance benefits under Title II of the Act, 42 U.S.C. § 416(i) and/or supplemental-

security-income benefits under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3).  *See* Doc. 6.

In response to my Order requiring Esquibel to file a motion to reverse or remand or the case

would be dismissed, *see* Doc. 17, Esquivel submitted an untitled document stating:

> I solely believe that Judge Birge twisted my medical files to her advantage.  Dr. Nillo
> also stated that I talked to him about racial slurs which never happened.  I didn't
> finish some of the tasks because he was so RUFF [sic] doing my exam.  To this day
> I don't know why he was hitting me in my butt with his fists.  The audio tapes
> transcripts never revealed Judge Birge stating, "you sure made a pretty penny" which
> I have a witness that can verifed [sic] to her saying that.  I need S. Bocian to produce
> evidence to me that I can lift 25-50 lbs. [sic] can stand and sit for 6-8 hours.  I
> believe according to Disability Programs I qualify for Social Security.  I had enough
> medical evidence to prove that Mr. Ford claimed on the end of my hearing there
> wasn't a job for me.  Judge Birge needed proof of me not being [sic] to lift and carry
> which she claimed wasn't in here [sic] files.  For her to come back with that

information to why I don't qualified [sic].  I need for her to explain why she used the word BULLY[2] on me.

Doc. 18.  I construe Esquivel's document as a motion seeking reversal of the Commissioner's decision on the bases that the medical evidence the ALJ relied upon is not sufficient to support her findings and that the medical evidence supports a finding of disability.

## STANDARD OF REVIEW

"Under the Social Security Act, a claimant is disabled if she is unable to do 'any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months.'"  *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)) (ellipsis in original).  In resolving Esquivel's motion, I

> review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotation omitted).

*Wilson v. Astrue*, ___ F.3d ___, ___, 2010 WL 537864, *2 (10th Cir. Feb. 17, 2010).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The ALJ must consider all of the medical evidence and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and I also must consider evidence that detracts from or undercuts her decision.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1262, 1264 (10th Cir.

---

[2] The word "bully" is clearly a typographical error on page four of the ALJ's decision that should have been "fully."  *See* Admin. R. at 14 ("She is bully able to interact with others and does so.").

2005) (stating that a court must examine "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met" and noting that, "[i]f the evidence upon which an evaluation is based is found to be credible, an ALJ must explain why he chooses not to accept a medical expert's diagnosis"). And although I must "meticulously examine the record" to determine whether substantial evidence supports the decision, I may "neither reweigh the evidence or substitute [my] discretion for that of the [ALJ]." *Musgrave*, 966 F.2d at 1374.

> The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work.
>
> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citations omitted; brackets in original).

## FACTUAL BACKGROUND

Esquivel states that she stopped working in 2004 because "mental problems, [a] lot of financial problems, lots of other problems kind of messed up my mind a little bit." Admin. R at 254. Esquivel first applied for disability benefits in September 2005, but she made no mention of having a mental disability in that application. *See id.* at 255. The basis of her September 2005 application was neck, back, and knee pain resulting from a 1984 automobile accident. *See id.* at 264, 183.

Esquibel fractured her right ankle in October 2005 "while running after her grandchild," *id.* at 208, and she had surgery on it on October 10, 2005. *See id.* at 200. Afterwards, she contended that the ankle injury also prevented her from working. In February 2006, Dr. E.S. Bocian, a consulting physician with the state Disability Determination Services, examined Esquivel and reviewed her medical records. Based on the apparent lack of medical treatment (apart from her ankle) since 1984, and the absence of positive findings on examination of her back, *see id.* at 183-84, Dr. Bocian concluded that there was "little evidence for any disability before the ankle fracture." *Id.* at 187. Based on past medical records showing a "normal neck exam," a normal back exam, evidence that she had been unloading trucks in 2003 but had obtained permission to not be assigned that activity without providing a "documented exam," and his examination, he concluded that the "ankle fracture should be expected to heal, and the claimant to be capable of medium work overall, within 12 months of the fracture." *Id.* at 183-84. Dr. Bocian attached a residual-functional-capacity ("RFC") assessment opining that Esquivel could lift 50 pounds occasionally, lift 25 pounds frequently, stand and/or walk a total of 6 hours/day; sit for a total of about 6 hours/day, and that she was not limited in pushing or pulling other than by the weight limitations set out. *Id.* at 183.

Dr. Nicholas Nillo also conducted a consultive physical exam in February 2006. He noted that Esquivel's effort on muscle testing in her upper extremeties was "virtually nil," and she refused to allow muscle testing of the right lower extremity. *See id.* at 192. He noted limited movement of the right ankle, and that an examination of her back was normal. *Id.* at 193. Dr. Nillo stated that Esquivel "probably would not be able to engage in activities requiring weightbearing on a sustained basis at this time, but a true evaluation of her functional status does not appear to be possible at this time." *Id.*

At her April, 2006 follow-up visit with her ankle surgeon, Dr. Mark Seibel, Esquivel complained of "some discomfort and occasional swelling related to increased levels of activity," "particularly after being on her foot all day long." *Id.* at 148.  Dr. Seibel found no swelling or deformity and no "tenderness with palpation, motion, or manipulation."  *Id.*  He recommended that Esquivel take tylenol, apply heat, use high-top tennis shoes or an ankle brace, and to modify her activity when she needed to.  *See id.*

Esquivel's request for benefits was denied in August 2006, *see id.* at 233, so her attorney requested a hearing before an ALJ and Esquivel saw more doctors.

Dr. Donald Watson saw Esquivel on December 11, 2006, noting that she complained of pain when she tried to walk or run.  *See id.* at 169.  His examination showed healing and "good alignment" in her ankle, with "no significant swelling or deformity."  *Id.*  Because she complained of tenderness in her ankle, Dr. Watson diagnosed "peroneal tendinitis and some irritation from retained hardware."  *Id.*  He prescribed anti-inflammatory medication and exercises.  *See id.* Esquivel later refused Dr. Watson's repeated recommendations that she have "an injection into the area of the peroneal tendon sheath," or that she have surgery to "remov[e] the hardware."  *Id.* at 125. In February 2007, Dr. Watson concluded that Esquivel's ankle had stabilized and that there were no "significant issues other than the persistent discomfort in the lateral aspect of her ankle."  *Id.* Because she continued to refuse injections and surgery, he recommended that she continue stretching exercises and use of oral anti-inflammatories.

Plaintiff sought a medical opinion on her ability to do work-related activities on November 9, 2006, from M. Landau, D.O.  *See* Admin. R. at 129.  Dr. Landau issued several findings stating that her ability to lift, sit, stand, and walk were severely limited, but in the portion of the RFC form requesting information that supported his assessment of her limitations, he stated, "unable to answer

lack of background information." *Id.* at 131. Dr. Landau also did not perform x-rays or other diagnostic testing. *See id.* at 140-41.

Esquivel saw consulting physician Norman Harrison, D.O., on January 3, 2008, for an evaluation of her back and ankle complaints. *See id.* at 134. His physical examination showed "moderate neck pain on palpation" with a "limited range of motion," moderate to severe low back pain on palpation and range of motion," and a limited range of motion of her right ankle with stiffness, and pain secondary to palpation. *Id.* He did not order any objective tests such as x-rays, computerized tomography scans, or magnetic resonance imagings. Dr. Harrison opined that Esqivel had neck and low back pain that were probably secondary to degenerative disc disease; that her knee pain was probably due to osteoarthritis; and that her ankle pain was secondary to her ankle fracture and hardware. *Id.* But he made no treatment recommendation and did not express an opinion regarding her alleged inability to work.

## THE ALJ'S DECISION

At step three of the sequential process, the ALJ found that Esquivel did not "have an impairment or combination of impairments that meets or equals any impairment" that would presumptively qualify her for disability benefits, but that she had been diagnosed with severe impairments of "back pain without etiology and occasional right ankle pain post healed fracture." *Id.* at 13.

At step four of the process, the ALJ noted that Esquivel's treating physicians had determined that her ankle fracture was "fully healed" and that she had no "abnormalitity and no need of an assistive device of any kind." *Id.* at 14. The ALJ noted that Esquivel did "not require prescribed pain medication;" had "never demonstrated an inability to maintain concentration, persistence or pace," had "never experienced an episode of mental decompensation" and was able to "understand,

remember and carry out" complex job instructions and to respond appropriately to working situations. *Id.* The ALJ also noted that the "most recent medical records indicate that claimant has been seen only occasionally for complaints of neck pain, bilateral knee pain . . . with no medications prescribed and no noted need for further treatment or diagnostic evaluations." *Id.* at 15. The ALJ noted that Dr. Nillo found Esquivel's upper extremities to be "normal in all regards," and that she "showed no restriction of range of motion." *Id.* The ALJ found Dr. Landau's findings of limitation to be unsupported "by any objective evidence and not shared by any other medical source of record," so she afforded his opinion "no evidentiary weight." *Id.* at 16.

The ALJ found Esquivel's allegations of severe limitations not to be credible because neither the medical record nor the objective medical evidence supported Esquivel's complaints and because "[a]ll objective evidence of record contradicts the existence of anatomical abnormalities," and her previously debilitating injury was expected to be only temporary. *Id.* The ALJ also noted that Esquivel had failed to participate or make efforts in medical testing; that examining physicians believed that she was exaggerating her symptoms; and that Esquivel had failed to follow her treating physician's instructions to exercise and use her lower extremities. *Id.* Finally, based on the treating surgeon's findings, Dr. Bocian's RFC assessment, the vocational expert's testimony, and Esquivel's failure to credibly establish work-related activities that she was unable to perform, the ALJ concluded that Esquivel retained the capacity to perform her past relevant work. *See id.* at 17.

## THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Reviewing the decision and the medical evidence, I conclude that Esquivel failed to meet her burden to submit sufficient credible medical evidence supported by objective findings to show that she was unable to perform her past relevant work. *See Lax*, 489 F.3d at 1084. Further, the ALJ's correctly applied the applicable law. Her findings that Esquivel is able to perform her past

relevant work are supported by the medical record, specifically by the medical records from Esquivel's treating surgeon, Dr. Seibel, and her treating physician, Dr. Watson, and by Dr. Bocian's RFC assessment.  *See Wilson*, ___ F.3d at ___, 2010 WL 537864, *2.  The ALJ fully explained why she did not give evidentiary weight to Dr. Landau's contrary RFC assessment and why she did not find Esquivel's testimony of debilitating pain and inability to ambulate without crutches or a wheelchair to be credible, and I find those reasons to be compelling.  *See Grogan*, 399 F.3d at 1262-64.  While the ALJ did not address Dr. Harrison's 2008 report, it was not "significantly probative" and he did not give an opinion regarding Esquivel's alleged disability, thus it is not contrary to the ALJ's ultimate finding.  *See Grogan*, 399 F.3d at 1262.

## CONCLUSION

For the reasons stated above, the motion to reverse and remand is denied.

**IT IS SO ORDERED.**

_____

**WILLIAM P. LYNCH**
**UNITED STATES MAGISTRATE JUDGE**